UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-21-96-CBG |
| ) | |
| JOSEPH ALLEN HERNANDEZ, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Now before the Court is Defendant Joseph Allen Hernandez's Motion to Exclude the Government's Expert Gene Wheat (Doc. No. 37). The Government has filed a written Response (Doc. No. 50). On November 12, 2021, the Court conducted an evidentiary hearing and heard testimony and argument on the Motion from both parties. Both Mr. Wheat and Randel Overton, an intended expert witness for the defense, testified at the hearing.

*I.   Background*

Defendant has been charged in a three-count Indictment with: (1) Murder in Indian Country, in violation of 18 U.S.C. §§ 1111(a), 1151, and 1153, for the killing of Audrey Hernandez by fire; (2) Murder in Indian Country, in violation of 18 U.S.C. §§ 1111(a), 1151, and 1153, for the killing of Francis Darlene Wright by fire; and (3) Arson in Indian Country, in violation of 18 U.S.C. §§ 81, 1151, and 1153. *See* Indictment (Doc. No. 15).

At 12:49 p.m. on June 5, 2019, emergency responders were dispatched to a fire at a mobile home at 117 Delaware Street in Marble City, Oklahoma. Ms. Hernandez, Defendant's mother, and Ms. Wright, Defendant's grandmother, were found at the scene

and were badly burned. Defendant incurred less serious burns in the fire.

Gene Wheat, an investigator with the Sequoyah County Sheriff's Department, arrived at the scene shortly thereafter. He first spoke to a law-enforcement officer on the scene and then interviewed Defendant inside an ambulance parked near the burning structure. He also spoke to others at the scene and drafted a diagram of the mobile home identifying the locations of Ms. Hernandez and Ms. Wright where found by the persons first on the scene and where taken when removed from the fire. *See* Def.'s Hr'g Ex. 11.

In his hearing testimony, Mr. Wheat stated that he came to investigate the fire scene on June 5, 2019, in his capacity as an investigator and remained there until around 4:30 p.m. that day. Mr. Wheat could not enter and examine the premises of the mobile home on that day due to the ongoing steam, gas, and fire activity. Early in the morning on the following day, June 6, 2019, Mr. Wheat returned to 117 Delaware Street to continue his investigation. While he was doing so in his capacity as a law-enforcement officer, he emphasized that his objective over both days was to determine the cause and origin of the fire.

When Mr. Wheat returned on June 6, 2019, there were still some smoldering items within the footprint of the mobile home. He examined the scene and took approximately 50 photographs. *See, e.g.*, Gov't's Hr'g Exs. 1-3. Mr. Wheat concluded that the mobile home was "a total loss."

II.   *Relevant Standards*

Rule 702 of the Federal Rules of Evidence governs the admissibility of opinion testimony at trial and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The focus of a Rule 702 inquiry "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993).

In applying Rule 702, the Court therefore must first determine whether the challenged witness "is qualified . . . by knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *see Taber v. Allied Waste Sys., Inc.*, 642 F. App'x 801, 806-07 (10th Cir. 2016); *see also* Fed. R. Evid. 104(a). If so, the Court "must then consider," in accordance with its "gatekeeping" function under Rule 702 and *Daubert*, "whether the expert's opinion is both relevant and reliable." *Taber*, 642 F. App'x at 807 (citing *Daubert*, 509 U.S. at 589). The Court "has wide latitude in deciding whether to exclude expert testimony" pursuant to Rule 702 and *Daubert*. *Schulenberg v. BNSF Ry.*, 911 F.3d 1276, 1282 (10th Cir. 2018) (internal quotation marks omitted).

"The burden of demonstrating the admissibility of expert testimony, tested against the standards of *Daubert* and Rule 702, is on the proponent of the testimony." *Richardson v. Watco Cos.*, No. CIV-10-47-HE, 2011 WL 12842517, at *2 (W.D. Okla. Apr. 29, 2011) (citing *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009)). A proponent who is "placed on notice" by a motion to exclude expert testimony is "obliged to marshal [its]

FRE 702 arguments that would support admission of [that expert's] testimony." *Nacchio*, 555 F.3d at 1253.

   III.   *Defendant's Motion*

The Government proposes to have Mr. Wheat testify as both a lay witness regarding his observations at the fire scene and as an expert witness "to the extent his testimony relates to opinion based on his professional experience or specialized knowledge and training." Gov't's Resp. at 1; *see also* Gov't's Notice of Intent to Offer Expert Witnesses (Doc. No. 49) at 1-2; *id.* Ex. 1 (Doc. No. 49-1) at 1-2.

Defendant contends that Mr. Wheat's proposed expert testimony fails to meet the minimum requirements for reliability under Rule 702 and *Daubert* and, therefore, must be excluded. Defendant primarily disputes whether Mr. Wheat's testimony relies upon "sufficient facts or data" and "is the product of reliable principles and methods" that were "reliably applied . . . to the facts of the case." Fed. R. Evid. 702(b), (c), (d); *see* Def.'s Mot. at 3.

Having carefully considered the parties' filings and the evidence and testimony presented at the hearing on Defendant's Motion, the Court finds that while certain aspects of Mr. Wheat's proposed expert testimony are sufficiently reliable to allow admission, other portions lack the relevance and the sufficiently "reliable reasoning and methodology" to be admitted at trial pursuant to Rule 702 and *Daubert*. *Schulenberg*, 911 F.3d at 1283; *see* Fed. R. Evid. 702(a)-(d). The Court considers each item of testimony in turn.

   1.   First, Mr. Wheat identified the area of origin of the fire as inside the mobile home near the home's door to a breezeway. At the hearing, Mr. Wheat offered detailed testimony, supported by a photographic exhibit of the burned flooring of the mobile home

at a location near the breezeway door, explaining how he relied upon burn patterns and witness statements to reach the conclusion that the fire "burned the longest [and] hardest right there in that area" and thus likely originated at that location. The Court therefore finds that Mr. Wheat's opinion as to this issue "ha[s] a logical and scientific basis," as Mr. Wheat "t[ook] known facts, together with his experience and knowledge . . . , and dr[ew] a rational conclusion." *Orth v. Emerson Elec. Co.*, 980 F.2d 632, 637 (10th Cir. 1992) (pre-*Daubert*); *see, e.g.*, *Scottsdale Ins. Co. v. Deere & Co.*, 115 F. Supp. 3d 1298, 1303-04 (D. Kan. 2015) ("Thompson's opinion is based on his examination of the combine, his review of photographs of the combine, and interviews with the Cherenys. He observed burn patterns and the extent of fire damage on the combine and determined that the fire began between the engine and the DPF. Such methods, employed by a fire investigation expert, are sufficiently reliable for determining the fire's point of origin." (citations omitted)). This opinion meets the requisite reliability requirements to be presented at trial.

2.  Second, Mr. Wheat proffers the opinion that the fire originated from two separate points: the bodies of the two female victims. His testimony and the record evidence in this regard reflect that he reached this conclusion based upon: (a) a statement made by Defendant to Mr. Wheat; (b) the female victims' statements, as relayed to other individuals and then to Mr. Wheat; (c) statements from spectators who arrived at the scene after the fire started; and (d) the manner of the burn injuries on Ms. Hernandez and Ms. Wright as found by the medical examiner. *See* Wheat Incident Report (Doc. No. 48-2) at 1.[1]

---

[1] Although the Government referred to an additional report authored by Mr. Wheat as setting forth details of his investigation, the Government did not present or seek admission

The Court finds that the conclusion that there were two geographically distinct points of origin is in and of itself not properly admissible, as it has not been shown to be "grounded in an accepted body of learning or experience in the expert's field," Fed. R. Evid. 702 advisory committee's note to 2000 amendment, or "based on sufficient facts or data," Fed. R. Evid. 702(b).  As discussed above, Mr. Wheat has affirmatively pointed to a single common area of origin.  He has provided no independent, scientifically reliable support for the conclusion of two geographically distinct points of origin or even that the victims were set alight separately.  The statement of Defendant does not support that view; nor did Mr. Wheat explain how the spectators' statements or the medical examiner's evaluation of the burn injuries on the bodies of the two victims support that view.

Mr. Wheat's opinion that there were two distinct points of origin is, then, simply an endorsement of the victims' statements that the fire was started when and where Defendant lit them both on fire.  While there is no dispute that the use of witness statements can serve a valuable role in the analysis of fire origin, this approach to the highly technical finding of area of origin reflects "too great an analytical gap between the data and the opinion offered."  *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005) (internal quotation marks omitted).  Even if witness statements were sufficient support for such an opinion, it is not apparent that an expert's specialized knowledge would be needed—or proper—in this matter to assist the trier of fact to determine the essential facts stated.  *See*

---

of any such report, and so this report is not in the available record before the Court. *See* Gov't's Resp. at 2.  Nor did the Government move at the hearing to admit the cited medical examiner's report, although the Court received testimony regarding its conclusions and one relevant photograph.

Fed. R. Evid. 702(a).  While Mr. Wheat may testify that his observations and opinions as to the cause and origin of the fire are consistent with the statements of Ms. Hernandez and Ms. Wright that Defendant doused them with an accelerant and lit them afire, Mr. Wheat may not opine at trial that he has observed or inferred from an expert analysis of the data that there were two distinct points of origin or offer a conclusion to this effect.

      3.      Third, Mr. Wheat opined that the likely cause of the fire was the ignition of an accelerant.  In reaching this opinion, he reviewed victim statements, as well as an OSBI testing report finding that the clothing of Ms. Hernandez "contain[ed] an ignitable liquid in the medium isoparaffinic class."  OSBI Report (Def.'s Hr'g Ex. 15).  Mr. Wheat examined the fire pattern and considered the fire dynamics at the scene and did not find anything that would refute the statements of Ms. Hernandez and Ms. Wright as to the cause of the fire.  Mr. Wheat additionally considered the possibility of other ignition sources, such as electrical sources, but found nothing at the scene that he believed warranted further investigation into an alternative source for the fire.  "Employing his experience and knowledge as a fire investigator, [Mr. Wheat] observed the physical evidence at the scene . . . and deduced the likely cause of the [fire].  Although such a method is not susceptible to testing or peer review, it does constitute generally acceptable practice as a method for fire investigators to analyze the cause of fire accidents."  *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir. 2005).

    Although Defendant's expert Mr. Overton disputed whether Mr. Wheat had adequately diagrammed these alternative potential sources, whether arc mapping is the standard practice in such an investigation, and whether Mr. Wheat had properly photographed the fire scene and interpreted the OSBI report, and further Defendant's

7

counsel criticized Mr. Wheat for previously misstating that accelerant was found on both female victims when it was only found on one, such challenges are a matter for cross-examination rather than for exclusion under Rule 702 and *Daubert*. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Taking into account the investigatory standards cited by both parties' experts, the Court finds that this opinion is sufficiently reliable to be presented at trial. *See Bitler*, 400 F.3d at 1235; *Orth*, 980 F.2d at 637.

4. Fourth, Mr. Wheat testified that, based upon both his own extensive experience in the field of fire investigation and what he had gleaned from other industry sources such as a peer-reviewed journal article, it is difficult to light gasoline with a cigarette.[2] The Court finds that Mr. Wheat sufficiently "explain[ed] how that experience l[ed] to the conclusion reached" and "how that experience [was] reliably applied to the facts" to permit him to testify as to this issue. Fed. R. Evid. 702 advisory committee's note to 2000 amendment. Moreover, "[t]he reliability standard is lower than the merits standard of correctness, and [the proponent] need only show the Court that their experts' opinions are reliable, not that they are substantively correct." *United States v. Hunt*, 464 F. Supp.

---

[2] Although Mr. Wheat indicated that this opinion was additionally based in part upon his viewing of several ATF videos that the Court has ruled inadmissible for trial purposes, Mr. Wheat's hearing testimony most reasonably reflects that the videos were, at most, simply an additional source of support for the opinion. The Court does not find that Mr. Wheat's study of these videos constitutes a "step that renders the expert's analysis unreliable" or "the expert's testimony inadmissible." *Nacchio*, 555 F.3d at 1241 (internal quotation marks omitted).

3d 1252, 1255 (W.D. Okla. 2020) (internal quotation marks omitted).

5.  Finally, at the hearing Mr. Wheat opined that, in his experience, if a fire starts in two separate locations at the same time, such an origination is evidence of arson and the fire likely is not accidental. Such testimony is, by itself, reliable given Mr. Wheat's extensive knowledge and experience investigating various types of fires. Given the Court's ruling that Mr. Wheat may not testify that the fire at 117 Delaware Street originated in two places, however, the Court sees no proper reason for Mr. Wheat to expound about the general implications of a dual-origin fire. *Cf. Nacchio*, 555 F.3d at 1258 ("[W]hen assessing expert testimony, the question before the trial court is specific, not general." (alteration and internal quotation marks omitted)). Such testimony would constitute, in essence, a non-scientific deduction that if Defendant separately set the two female victims on fire, he necessarily did so intentionally and not accidentally. Again, it is not apparent that an expert's specialized knowledge would be needed—or proper—in assisting the trier of fact to determine that essential fact. *See* Fed. R. Evid. 702(a).

## CONCLUSION

As outlined herein, Defendant's Motion to Exclude the Government's Expert Gene Wheat (Doc. No. 37) is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED this 15th day of November, 2021.

CHARLES B. GOODWIN
United States District Judge